UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>NABOR FELIX SOTO-GARCIA,<br><br>　　　　　　　　　　　Defendant. | Case No.:  16-cr-2641-GPC<br><br>**TENTATIVE ORDER DENYING MOTION TO DISMISS THE INDICTMENT** |

Defendant moves to dismiss the indictment against him on the grounds that his two prior removals were invalid.  For the reasons discussed below, the Court is prepared to **DENY** the motion.

## BACKGROUND

On or about November 6, 2016, a federal grand jury in this district returned an Indictment charging Defendant with attempted re-entry by a removed alien, in violation of 8 U.S.C. § 1326(a) and (b).  Dkt. No. 8.

Defendant Nabor Felix-Soto, alias Clemente Hernandez-Garcia, was born in Mexico on July 12, 1974.  Dkt. No. 10-2 at 23.  He attended school in Mexico, but never completed secondary school.  Soto-Garcia Declaration ¶ 2, Dkt. No. 10-2 at 3.  In 1990 or 1991, Soto arrived in the Salinas area of California at approximately 17 years old.  *Id.* ¶ 3.  He lived with his uncle, a legal permanent resident, who Soto describes as a father

figure. *Id.* ¶ 4. While in Salinas, he attended school for a time but mostly worked in manual labor, growing and harvesting agricultural products. *Id.* ¶ 6. In 1995, he met Lisa, a United States citizen, who he continued dating "for many years." *Id.* ¶ 7.

In 1995, Defendant was convicted of several charges in the Municipal Court of Salinas, California. Dkt. No. 13 at 3. On May 17, 1995 he was sentenced for taking a vehicle without consent, a misdemeanor in violation of Cal. Veh. Code § 10851; on August 31, 2015, he was sentenced for misdemeanor burglary in violation of Cal. Penal Code § 459; and on October 19, 1995 he was sentenced for providing false identification to a peace officer, violating Cal. Penal Code § 148.9(A), for a misdemeanor DUI, violating Cal. Veh. Code § 23152(a), and for driving on a suspended license, violating Cal. Veh. Code 14601.5(A). *Id.*

Two years later, in 1997, Defendant was convicted of a slew of other charges in the Superior Courts of Monterey, King City, and Santa Cruz. *Id.* at 4. On February 19, 1997, he was sentenced for taking a vehicle without consent in violation of Cal. Veh. Code § 10851(A); on May 20, 1997, he was sentenced for receiving stolen property in violation of Cal. Penal Code § 496(A) and for providing false identification to officers in violation of Cal. Penal Code § 148.9(A); on July 28, 1997, he was sentenced for taking a vehicle without consent, a felony, in violation of Cal. Veh. Code § 10851 and for providing false identification to officers, violating Cal. Penal Code § 148.9(A); and finally, on October 21, 1997 he was sentenced to two years in state prison for petty theft with a prior in violation of §§ 484 and 666 of the Cal. Penal Code. *Id.* at 4.

Following his conviction for petty theft with a prior, Soto was placed into removal proceedings. Dkt. No. 10-1 at 2. The Notice to Appear ("NTA") alleged that Soto had entered the United States without being inspected, admitted, or paroled by an immigration officer and that he was ineligible for admission because he had been

convicted of petty theft with a prior, a crime involving moral turpitude.[1]  Dkt. No. 10-2 at 9.

### 1998 Removal

On October 27, 1998, Defendant appeared before Immigration Judge John Zastrow at a removal hearing in Eloy, Arizona.  Defendant was charged with being removable under § 212(a)(6)(A)(I) for having entered the U.S. without being admitted or paroled and under § 212(a)(2)(A)(i)(I) for having committed a crime of moral turpitude.  Dkt. No. 10-2 at 9.  The IJ explained the charges of removability against him and Soto conceded his removability.  Recording of 1998 Proceeding, Exhibit 1, Dkt. No. 14 (at 26:00-27:00).  He was subsequently ordered removed to Mexico.

### 1999 Expedited Removal

On April 3, 1999, Defendant attempted to enter the United States through the pedestrian entrance of the San Ysidro Point of Entry.  Exhibit G, Dkt. No. 10-2 at 20.  Soto falsely presented himself to the immigration officer as Giron Perez.[2]  *Id.*  After the Defendant was referred to secondary inspection, a search revealed that his true name was Clemente Hernandez-Garcia and that he was born in Mexico.  *Id.*  At that time, officials also discovered that the Defendant had been previously ordered removed from the United

---

[1] Defendant does not contest that he was convicted of a crime of moral turpitude or that he had entered the United States without inspection.

[2] Whether or not Soto merely made an oral false representation to the officer or also presented a false document to the immigration officer is unclear.  Both the Defendant and Government state that Soto presented the officer with a birth certificate with a different name.  *See* Dkt. No. 10-1 at 2; Dkt. No. 13 at 8.  The narrative contained in the INS record, however, states that Defendant held himself out as U.S. citizen Giron Perez, does not mention a birth certificate, and moreover suggests that the Defendant did not have any form of identification on his person.  *See* Exhibit G, Dkt. No. 10-2 at 20.  ("Upon primary inspection, the defendant presented himself to U.S. Immigration Inspector Donn H. Gladish as United States citizen using the name of GIRON PEREZ.  Inspector Gladish questioned the defendant as to his citizen and place of birth.  The defendant stated that he was a United States citizen by birth in Salinas, California and that he did not have any form of identification.  Suspecting the defendant to be an oral false claim to U.S. citizenship, Inspector Gladish escorted the defendant to secondary inspection for a more thorough examination toward his claim of U.S. citizenship.")

States to Mexico and that he had not applied for nor received permission from the U.S. Attorney General to re-enter the United States. *Id.*

Thereafter, an immigration inspector issued an order of expedited removal pursuant to Section 235(b)(1) of the INA. *See* Exhibit I, Dkt. No. 10-2 at 27. The order indicated that Soto was ineligible to enter the United States under § 212(a)(6)(C)(ii) because he had falsely represented himself as a U.S. citizen when he was, in fact, a Mexican citizen. *See id.* at 27-28. During the processing, Soto made a sworn statement. Exhibit H, Dkt. No. 10-2 at 22-25. In it, he admitted to being deported in October 28, 1999; to falsely claiming to be Giron Perez, a U.S. citizen; and to knowing that he lacked permission from the Attorney General to reenter the U.S. after he had been deported. *Id.* at 24.

On April 2, 2001, Defendant left the Unites States pursuant to the expedited removal.

## DISCUSSION

Soto challenges his indictment under § 1326 by contesting the validity of his 1998 and 1999 removals, both of which could serve as the predicate offense in a § 1326 prosecution. *See* Dkt. 10-1 at 2. Defendant argues that because both his 1998 and 1999 removals were invalid, neither can serve as a basis for his § 1326(d) prosecution. *Id.* As discussed below, however, Soto cannot show that his 1999 removal was invalid, and therefore, cannot avoid a § 1326 prosecution predicated on that removal. Accordingly, the Court will focus its inquiry on Soto's 1999 expedited removal and the reasons why it is valid.

### I. Collateral Attack under § 1326(d)

In *Mendoza-Lopez* the Supreme Court held that the only way to attack the validity of a deportation or removal order relied upon in a § 1326 prosecution is to argue that the issuance of the order violates the noncitizen's due process rights. *See U.S. v. Mendoza-Lopez*, 481 U.S. 828, 837 (1987). This right to challenge the validity of a prior

deportation ore removal order is codified at 8 U.S.C. § 1326(d). *See U.S. v. Gonzalez-Flores*, 804 F.3d 920, 926 (9th Cir. 2015).

Under § 1326(d), a noncitizen must satisfy three requirements in order to successfully challenge a removal order. The individual must show (1) that he exhausted administrative remedies that may have been available to seek relief against the order; (2) that the removal proceedings improperly deprived him of the opportunity for judicial review; and (3) that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d); *see also Gonzalez-Flores*, 804 F.3d at 926.[3]

In order to establish that a predicate removal was "fundamentally unfair," a noncitizen must demonstrate that the proceeding (1) violated the noncitizen's due process rights and (2) that the noncitizen suffered prejudice as a result. *U.S. v. Barajas-Alvarado*, 655 F.3d 1077, 1085 (9th Cir. 2011). To establish prejudice, a noncitizen must demonstrate that grounds for relief were plausibly available at the time of removal.

## II.   1999 Expedited Removal

Defendant argues that the 1999 removal violated due process because the processing officers failed to provide him with competent translation and because they denied him the opportunity to review his sworn statement. Dkt. No 10-1 at 3. That alleged denial of due process, Defendant contends, prejudiced him because he plausibly would have been eligible to withdraw his application for admission, thus avoiding any finding of removal. *See id.*

---

[3] In its opposition brief, the Government does not challenge Defendant's assertion that he has satisfied the first two prongs of § 1326(d). *See generally* Dkt. No. 13. Accordingly, the Court concludes that Defendant has satisfied his burden as to the first two statutory requirements. *See United States v. Castillo-Marin*, 684 F.3d 914, 919 (9th Cir. 2012) (quoting *United States v. McEnry*, 659 F.3d 893, 902 (9th Cir. 2011) for the proposition that "when the government does not make argument that 'was available at the time it filed its answering brief . . . [i]t has waived that argument.'"). Given the Government's apparent waiver, the Court's inquiry will focus on whether or not Defendant has satisfied the third prong of § 1326(d), requiring that the removal proceeding was "fundamentally unfair."

The Court, however, finds that no prejudice flowed from the alleged due process violations.  Contrary to what Soto asserts, he was not plausibly eligible for relief from removal and therefore cannot demonstrate prejudice.

**A. Prejudice – Availability of Relief from Removal**

Withdrawal of an application for admission is a discretionary form of relief.  *See* 8 U.S.C. § 1225(a)(4); 8 C.F.R. § 1235.4; *see also U.S. v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013).  When a noncitizen relies on a form of discretionary relief to argue prejudice, courts engage in a two-step process to determine whether or not such relief was plausibly available.  *Rojas-Pedroza*, 716 F.3d at 1263 ("Where the relevant form of relief is discretionary, the alien must make a 'plausible' showing that the facts presented would cause the Attorney General to exercise discretion in his favor.").

First, the court must identify the factors that inform an officer's discretion to grant relief.  *Id.*  Second, the court must assess whether "in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the alien's own case, it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor."  *Id.*  The focus of the second inquiry is on "whether aliens with similar circumstances received relief," not whether or not general statistics offer support.  *Id.*  That said, a Defendant need not show that he "actually would have been granted relief" in order to prove plausibility.  *Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004).

The Ninth Circuit has observed that there is "scant guidance" addressing how and when an immigration officer should exercise discretion to grant withdrawal of application for admission.  *See U.S. v. Barajas-Alvarado*, 655 F.3d at 1089.  One source relied upon is the Board of Immigration Appeal's decision in *Matter of Gutierrez*, which concluded that "an alien's attempted fraudulent entry would ordinarily make the alien ineligible for withdrawal of relief."  *Id.* at 1090.  Another is the Inspector's Field Manual ("IFM"), an agency-prepared guidance document.  *Id.*

The Inspector's Field Manual directs an immigration officer to consider six, non-exhaustive factors when evaluating a noncitizen's request to withdraw: (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations. *Id.* at 1090. Crucially, the Inspector's Field Manual also states that an "expedited removal order should ordinarily be issued, rather than permitting withdrawal, in situations where there is obvious, deliberate fraud on the part of the applicant." INS Inspector's Field Manual § 17.2(a), *available at* Westlaw FIM-INSFMAN 17.2.

**B. Analysis**

There is no dispute that Soto falsely represented himself to be a U.S. citizen by the name of Giron Perez. Accordingly, he engaged in exactly the kind of "deliberate fraud" contemplated by the IFM as ordinarily disqualifying. This fact, therefore, weighs heavily against Soto. *See Barajas-Alvarado*, 655 F.3d at 1090-91 (denying withdrawal of application on nearly identical grounds); *U.S. v. Garcia-Gonzalez*, 2013 WL 1562540, at *5 (S.D. Cal. Apr. 12, 2013) (Chief J., Moskowitz), *aff'd U.S. v. Garcia-Gonzalez*, 791 F.3d 1175 (9th Cir. 2015) (same); *see also U.S. v. Raya-Vaca*, 771 F.3d 1195, 1207-08 (9th Cir. 2014) (permitting withdrawal of the defendant's application for admission, in large part, because there was no deliberate fraud).

Contrary to what Defendant argues, he has not adequately overcome this finding of fraud to demonstrate that relief from removal was nonetheless plausible. In *Barajas-Alvarado*, the court emphasized that it was not plausible for a defendant to receive permission to withdraw his application when his attempted fraudulent entry was not offset by relevant, positive equities. 655 F.3d at 1090-91. Barajas, who deliberated presented a false birth certificate to immigration officials, argued that he could have plausibly received relief, notwithstanding his attempted fraudulent entry, because (1) it was statistically plausible that he would have received relief; (2) his prior crimes were not

serious; and (3) he had "tremendous" ties to the United States. *Id.* at 1091. The court disagreed. It rejected Barajas-Alvarado's statistical argument outright as being foreclosed by Ninth Circuit case law. *See id.* (citing *Corrales—Beltran*, 192 F.3d 1311, 1318 (9th Cir. 1999)). As for the latter two arguments, the Court concluded that both were minimally probative because they were "not listed as considerations in the Inspector's Field Manual and therefore carry little weight, particularly in light of the Field Manual's emphasis on the disqualifying effect of "obvious, deliberate fraud on the part of the applicant." *Id.*

Perhaps recognizing how unfavorable *Barajas-Alvarado* is to his argument, Defendant seeks to distinguish himself on the grounds that he, unlike Barajas-Alvarado, did not use a false birth certificate to gain entry or flee from the inspecting immigration officials. Dkt. No. 10-1 at 20. The Court is not persuaded by such distinctions. For one, Soto himself recounts in his statement of the facts that he did, in fact, present a false birth certificate at the San Ysidro Port of Entry. Dkt. No. 10-1 at 2. His conflicting accounts about how he attempted to gain entry into the U.S. cast doubt on the credibility of his argument. Regardless, even assuming *arguendo* that he only made a false oral representation, that fact does not negate his deliberate intent to defraud, which is the relevant inquiry under the IFM. *See Garcia-Gonzalez*, 2013 WL1562450, at *5 ("Defendant's immigration violation was serious because of the fraud, which evidenced an intent to violate the law."). Two, the *Barajas-Alvarado* decision did not flag the defendant's attempt to flee as relevant to its analysis under the IFM factors. *See* 655 F.3d at 1090-91. Rather, the overwhelming focus of the court's inquiry was on Barajas-Alvarado's attempted fraudulent entry. As such, Defendant cannot negate the import of his own fraudulent attempt to enter by citing to inconsequential distinctions between his facts and those in *Barajas-Alvarado*.

The Court is also unpersuaded by Defendant's attempt to demonstrate the plausibility of relief by relying on statistics regarding grants of withdrawal when fraud is alleged. For one, Soto himself concedes that *Barajas-Alvarado* unequivocally rejected

that argument. Dkt. No. 10-1 at 22. Nevertheless, Defendant argues that because "the defendant in that case [*Barajas-Alvarado*] had substantially worse equities than Mr. Soto," the court's reasoning should not apply, here. Dkt. No. 10-1 at 23-24. As the Court stated above, however, it does not find the distinctions between Soto and Barajas-Alvarado to be meaningful. Moreover, even if it did, Ninth Circuit case law strictly limits the probative value of statistics. *See, e.g.*, *Rojas-Pedroza*, 716 F.3d at 1263 ("In making this determination, we are not concerned with general statistics"); *Raya-Vaca*, 771 F.3d at 1209 ("According to our precedent, statistics alone cannot establish the plausibility of relief."). Thus, absent other indicia suggesting that relief would have been plausible, Soto's statistical argument cannot carry his burden.

Yet as discussed below, because all of the IFM factors weigh against Soto, he cannot demonstrate that relief was plausible.

**(a) Seriousness of the violation and intent to violate the law**

As the Government points out, Soto's immigration violation was serious as the manner of his entry manifested an intent to violate the law. As was the case with the defendant in *Barajas-Alvarado*, Soto has conceded that he knowingly misrepresented his identity to gain admission to the United States. *See* 655 F.3d at 1090; *see also U.S. v. Garcia-Gonzalez*, 2013 WL 1562540, at *5. Such a concession establishes both the seriousness of his violation and an intent to violate the law, that is, the first and third prongs of the IFM test. *See Barajas-Alvarado*, 655 F.3d at 1090; *see also Garcia-Gonzalez*, 2013 WL 1562540, at *5 (noting that "even absent a prior aggravated felony conviction, Defendant's immigration violation was serious because of the fraud"). Also contributing to the seriousness of Soto's violation is the fact that he had been previously removed a year before. *See Raya-Vaca*, 771 F.3d at 1208 (noting that a history of illegal reentries contributed to the seriousness of the offense).[4]

---

[4] Defendant's attempt to undermine the probative value of the third factor by averring that his "intent was presumably to enter, which is no different than the vast majority of people found inadmissible" is

**(b) Previous findings of inadmissibility**

As for the second factor, Soto does not dispute that he was previously found inadmissible on the separate grounds of having entered without inspection, § 212(a)(6)(A)(I), and for committing a crime of moral turpitude, § 212(a)(2)(A)(i)(I). He also concedes that he was previously removed. That Soto only had one previous, and allegedly invalid removal, does not militate against his previous findings of inadmissibility or somehow make this factor weigh in his favor. *See Barajas-Alvarado*, 655 F.3d at 1090 (finding that this factor weighed against the noncitizen because he had two previous removals); *Garcia-Gonzalez*, 2013 WL 1562540, at *5 (finding that this factor cut against plausibility because defendant had been removed once before); *see also Garcia-Gonzalez*, 791 F.3d at 1179 (concluding that a previous removal, regardless of whether or not it was a valid predicate removal for a § 1326 prosecution, weighs against the availability of discretionary relief). As such, the Court rejects Defendant's suggestion that it is relevant that he only had one previous, and allegedly invalid, removal order. *See* Dkt. No. 10-1 at 20. The above-cited decisions make clear that one removal, even if potentially invalid, is enough for this factor to cut against the plausibility of having received permission to withdraw an application for admission.

**(c) Ability to overcome inadmissibility**

Soto concedes that it would have been difficult for him to overcome the 1999 finding of inadmissibility and, therefore, the fourth factor also weighs against him. *See* Dkt. No. 10-1 at 20. Indeed, because Soto had no petitions pending in 1999, because he was not married to a U.S. citizen, and because his nearest relative living in the U.S. was not a U.S. citizen, he could not have plausibly overcome his inadmissibility through

---

unavailing. The IFM contrasts noncitizens who knowingly intend to enter the U.S. illegally with individuals who "may have innocently or through ignorance, misinformation, or bad advice obtained an inappropriate visa." INS Inspector's Field Manual § 17.2(a). Here, again, because Soto misrepresented his identity and claimed to be a U.S. citizen, there is no doubt that he intended to illegally enter and his fraud was anything but inadvertent. The third factor, therefore, weighs heavily against Soto.

alternative means, such as family-based adjustment of status. *See Raya-Vaca*, 771 F.3d at 1208; *see also U.S. v. Cisneros-Resendiz*, 656 F.3d 1015, 1021 (9th Cir. 2011)

**(d) Age & poor health**

There is no indication in the record that Soto was in poor health in 1999 and, at age 24, he was neither a youth nor elderly. *See Barajas-Alvarado*, 655 F.3d at 1090 (finding that this factor cut against plausibility of relief because the defendant, at 35, was neither "a youth nor elderly"). Arguing that he was, nonetheless, a "fairly young man," does not change this conclusion. *See Cisneros*, 656 F.3d at 1021 (concluding that a 25- year-old defendant did not count as a positive factor in the plausibility analysis). Accordingly, this factor weighs against Soto.

**(e) Humanitarian or public interest concerns**

Notwithstanding Defendant's protestations to the contrary, this final factor also weighs against him. Soto argues that his "positive work history" of seven or eight years and the fact that he "helped support" his lawful-permanent-resident uncle and U.S.-citizen girlfriend would have made his claim for relief plausible. Dkt. No. 10-1 at 20.

Soto, however, has not provided the court with a single case that considered positive work history as a factor in granting relief. *See Rojas-Pedroza*, 716 F.3d at 1263 (noting that the plausibility inquiry is focused on whether noncitizens in similar circumstances received relief). Moreover, because work history is not one of the IFM factors it carries little weight. *See Barajas-Alvarado*, 655 F.3d at 1091 (disregarding facts relied upon by the defendant because they were not listed in the IFM); *see also Cisneros-Resendiz*, 656 F.3d at 1022 (noting that factors not "directly related to the issue of inadmissibility" do not help a defendant demonstrate plausibility of receiving permission to withdraw an application).

More importantly, Soto has also failed to demonstrate that other noncitizens in similar circumstances were able to demonstrate the plausibility of receiving relief by relying on familial connections. The *Barajas-Alvarado* court refused to even consider the defendant's family ties as part of the humanitarian, public-interest inquiry. *See* 655

F.3d at 1091 (finding that having "tremendous ties" to the U.S. did not weigh in favor of plausibility especially in light of defendant's attempted fraudulent entry).  The same is true of the court in *Cisneros-Resendiz*, 656 F.3d at 1021 (not considering family ties in a case concerning a false claim of citizenship even though defendant had parents and siblings living in the U.S.) and the court in *Garcia-Gonzalez*, 2013 WL 1562540, at *5 (disregarding defendant's family ties as carrying "little weight" despite fact that defendant had two U.S.-citizen children, one with Down Syndrome, and a U.S. citizen-father).  Soto, therefore, has no legal basis for arguing that having an uncle legally living in the U.S. and a United States girlfriend is enough to make withdrawal of removal plausible in light of his claim of false citizenship.  The defendants in *Barajas-Alvarado*, *Cisneros-Resendiz*, and *Garcia-Gonzalez*, all of whom had attempted to fraudulently enter, all failed to demonstrate that it was plausible that they would have been granted permission to withdraw their application for admission; accordingly, Soto's claim, too, must fail.

Finally, the Court notes that Defendant's reliance on *Raya-Vaca*, where the court found that permission to withdraw an admission application was plausible, is misplaced. Soto argues that his equities are more equivalent than not to the equities in *Raya-Vaca* and, therefore, that relief was plausible.  Dkt. No. 16 (noting that Raya-Vaca was a noncitizen smuggler, had been removed only once before, could not have easily overcome inadmissibility, was neither young nor old, and had a long-term partner, children, mother, brother, and relatives in the U.S.).  This perceived parallel between Soto and Raya-Vaca, however, has no persuasive value because Raya-Vaca did not attempt to fraudulently enter the country.  The *Raya-Vaca* court conspicuously began its analysis of the plausibility that the defendant would have been granted relief by stating:

> First and foremost, Raya-Vaca committed no fraud, let alone obvious or deliberate fraud, when entering the United States.  Therefore a crucial consideration that, according to the Inspector's Field Manual, "ordinarily militates against withdrawal—and a consideration of singular importance in *Barajas-Alvarado*, 655 F.3d at 1090—is absent here.

771 F.3d at 1208. That the *Raya-Vaca* court clearly distinguished the equities of its case from those in *Barajas-Alvarado* based on a finding of fraud, strips Soto's analogy of its persuasive value. Raya-Vaca's mode of entry into the United States — that is, through the mountains — may have manifested an intent to enter illegally but it was not fraudulent. By contrast, Soto falsely represented himself to be Giron Perez, a U.S. citizen. Accordingly, Soto's case falls under *Barajas-Alvarado* and not *Raya-Vaca* and, thus, he cannot establish that he would have been plausibly entitled to withdraw his application for admission in 1999.

In sum, any due process violations that may have occurred during Soto's 1999 expedited removal proceeding did not cause any prejudice to him because he was not plausibly eligible to receive permission to withdraw his application for admission. As such, Defendant has failed to demonstrate that the removal proceeding was fundamentally unfair and, therefore, cannot establish that his 1999 removal was invalid. Thus, at the very least, Soto's 1999 removal is valid and the Government's § 1326 prosecution may proceed against him.

For the reasons discussed above, the Court is prepared to **DENY** the Defendant's motion to dismiss.

## CONCLUSION

Counsel are advised that the Court's rulings are tentative, and that the Court will entertain additional argument at the hearing on **Monday, January 30, 2017**.

**IT IS SO ORDERED.**

Dated: January 30, 2017

Hon. Gonzalo P. Curiel
United States District Judge